RECEIVED
USDC. CLE K. CHARLESTON. SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

2009 NOV 10  A 9: 58

| | |
|---|---|
| Herman Gadeson, #113516, ) <br> a/k/a Herman Gadsden, ) <br> ) <br>  Plaintiff, ) <br> ) <br> -verssus- ) <br> ) <br> Warden Reynolds, Director Jon ) <br> Ozmint; Divisional Director ) <br> Robert Ward, all in their ) <br> official and individual ) <br> capacities, ) <br> ) <br>  Defendants. ) | C. A. No. 2:08-3702-CMC-RSC <br><br> **REPORT AND RECOMMENDATION** |

This civil rights action brought by a state prisoner

proceeding pro se and in forma pauperis pursuant to 42 U.S.C.

§ 1983[1], is before the undersigned United States Magistrate Judge

for pre-trial management and a report and recommendation on

defendants' motion for summary judgement.  28 U.S.C. § 636(b).

On November 6, 2008, the plaintiff, Herman Gadeson, filed

---

[1] Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of Section 1983, titled a civil action for deprivation of
rights reads in relevant portion: the United States or other
person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress, except
that in any action brought against a judicial officer for an act
or omission taken in such officer's judicial capacity, injunctive
relief shall not be granted unless a declaratory decree was
violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

this action naming as defendants Warden Reynolds, Director Jon Ozmint, and Divisional Director Robert Ward, all officers of the South Carolina Department of Corrections (SCDC).

Plaintiff complains that he was wrongly placed on "lock-up" on January 30, 2008, because it was determined that he was a sexual predator following review because of the Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601. He claims that such placement violates his due process rights, his right to be free from cruel and unusual punishment, and his double jeopardy rights. He seeks a court order to "make SCDC abide by their own policy and release me from lock up," as well as damages.

On July 30, 2009, the defendants filed a motion for summary judgment along with various affidavits. On July 31, 2009, the plaintiff was provided a copy of the defendants' summary judgment motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed an opposition to the motion on October 15, 2009. Hence it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56(c), a district court must enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence

2

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," entry of summary judgment is mandated. Fed.R.Civ.P. 56(c). To avoid summary judgment on a defendant's motion, a plaintiff must produce evidence creating a genuine issue of material fact. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, at 255, 106 S.Ct. at 2513-14.

## **FACTS**

The facts either undisputed or taken in the light most favorable to the plaintiff as the non-moving party and all reasonable inferences drawn in favor of the plaintiff are as follow.

The "statement of claim" portion of Plaintiff's verified complaint[2] reads:

> I was placed on lock up on Jan, 302008, The reason
> I was given is because my name went before a panel
> and it was determined that I am a sexual predator.
> This determination was based on disciplinary
> conviction eleven years ago on March 18, 1997 and
> a alleged incident that was never investigated and
> I was never charged with that supposedly happened
> on July 2997. Warden Reynolds put my name before
> that panel because she said she doesnt want
> inmates that have done the crime I committed and
> the length of time I have been incarcerated on her
> yard. This allegation was just her means for
> carrying out her objective. When I was placed on
> P.R.E.A. status on lockup I was told I could
> appeal the decision to Jon Ozmint, Director, and
> Robert Ward Divisional Director. I appeal to both
> and was denied. I looked up the PRE.A. policy and
> criteria that the panel has to go by and policy
> states plainly that Im not suppose to be on a
> separate institution from inmates the panel has
> designated as a sexual victim.  Policy PO.21.12-
> 1.4.1 If an inmate is designated as a perpetrator
> by the P.R.E.A. Review Comm, the inmate will be
> assigned to a previously determined security level
> 2 or 3 institution appropriate to the inmates
> security level and needs. No inmate designated as
> a victim of sexual assault by the P.REA committee
> will be assigned to these institutions. OP21.12-
> 1.4.2 Any sex offender believed to present a
> danger to other offenders will be referred to
> Mental Health Services. Further assessment will
> include, but not be limited to, a review of any
> history of sexual victimization or sexually
> aggressive behavior. OP 21.12-1.4.3 Inmates
> identified as sexual perpetraters will be
> evaluated for the Sex Offender Treatment Program.
> Non of these policy's has been offered to me, no
> type of treatment for my alleged sexual misconduct
> and when I brought this up to both Directors they

---

[2] Verified complaints by pro se prisoners are considered as affidavits when based upon personal knowledge. Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991).

4

both refuse to address these claims or follow
their own policy. I have a life sentence and by
them holding me on lock up they are first
violating my constitutional rights by punishing me
for a charge I was already disciplined for on
March 1997, By going against there own policy the
Defendants are basically saying that they are
going to hold me on lock up until I die because I
have a life sentence and am not guaranteed parole.
(Sic).

Complaint pgs. 3-5.

The affidavit of James E. Sligh, Jr., the Operations
Coordinator for the SCDC and a member of the PREA Committee
indicates that Congress enacted the Prison Rape Elimination Act
PREA in 2003 in order to establish a zero-tolerance policy
regarding rape in prisons and other confinement facilities.  The
purpose of the Act is to protect inmates in correctional
facilities from sexual abuse or sexual assault.  The SCDC
developed a policy to effect the mandates of PREA.  The policy
provides that staff of a correctional facility who become aware
that an inmate has a "history of/and or prior convictions of
sexual assaults" will forward this information to the PREA review
committee so that the committee can make its own review and take
appropriate action.

The PREA Committee is a multi-disciplinary committee that
consists of five members who meet to discuss inmates that have
been referred to the committee for potential classification as
sexual perpetrators, as well as for removal of an inmate from
security detention who was previously classified as a sexual

5

perpetrator. Sligh attests that when a referral comes to the Committee, the Committee researches the individual's history and discusses all aspects of the case, including looking at the individual's disciplinary charges and convictions, current and previous criminal convictions, and previous institutional behavior. The Committee then votes as to whether or not the individual should be designated as a sexual perpetrator. If so, then a second vote is taken to determine if the individual should be placed in security detention.

Sligh also averred that security detention is a form of administrative detention or segregation within the SCDC in which an individual is housed and recreated alone in the Security Management Unit (SMU) at the inmate's respective institution. Sligh attests that security detention is not a form of punishment, but is designed to segregate an inmate who has been determined to pose a threat to the security and/or safety of the institution from other inmates, and to place that individual in a housing unit that has controlled movement and an increased security presence.

The committee's recommendation is sent to Defendant Robert Ward who is the Director of Operations for review and modification if necessary. If Ward approves the recommendation, the inmate is forwarded a copy of the findings, and must sign that he has been so informed. The inmate is also informed that

he may appeal the decision to Director Ozmint. The committee's findings are sent to the Warden of the inmate's institution who sets up an inmate classification hearing that is held to formalize the classification process.

Specifically with regard to the plaintiff Sligh affied that the plaintiff was referred to the PREA committee by Defendant Warden Reynolds. The PREA committee considered the plaintiff's entire history since his incarceration in 1982. The record revealed that, in addition to numerous disciplinary infractions, the inmate had been accused of sexually assaulting another inmate in 1997 and again in 2007. Further investigation revealed that the inmate has a history of "flying under the radar," grooming, culling and intimidating younger, weaker inmates. A number of inmates have requested that they be segregated from the plaintiff. On March 18,2008, at Kershaw Correctional Facility the classification hearing was held and, after a thorough review, the PREA committee determined that the plaintiff is a sexual perpetrator and recommended that, because of his specific history, he be placed in lock-up. The recommendation was approved by Defendant Division Director Ward. Plaintiff was notified of the decision and advised of the appeal procedure. He filed an appeal which was denied by Defendant Director Ozmint.

Sleigh also averred that the nature of Plaintiff's confinement does not exceed similar confinement for inmates in

similar situations either in duration or degree of restriction.

When the classification under PREA is made it is not considered

to be a permanent classification.  All inmates so classified have

informal reviews on a monthly basis and formal reviews every six

months.  The actions taken with regard to Plaintiff's

classification review under PREA and his subsequent

classification and treatment are within the mandates of

the Prison Rape Elimination Act and the policies of the SCDC. The

review and subsequent actions taken are solely for the protection

of the inmates within the SCDC system and are necessary for

the day-to-day management of the operations of that system and

are not taken as a punitive measure against the inmate. (See

generally Aff. of Sleigh).

## DISCUSSION

A review of the record and relevant case law reveals that

the defendants' motion should be granted and this matter ended.

This is not a difficult case.  Plaintiff has no

constitutional right to placement in any particular custody

classification.  Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir.

1997)["[A] prisoner does not have a constitutional right to be

housed at a particular institution, ..., [or] to receive a

particular security classification...."]; Neals v. Norwood, 59

F.3d 530, 533 (5th Cir. 1995)["[A] prison inmate does not have a

protectable liberty or property interest in his custodial

classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

In order to show a constitutional violation with respect to a custody classification, the conditions must exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. <u>Sandin v. Conner</u>, 515 U.S. 472, 483-484, 115 S.Ct. 2293 (1995). There is no such evidence in this case. The defendants are entitled to summary judgment.

To the extent that the plaintiff argues that the defendants have violated SCDC policies or procedures in placing him in this custody classification, even if this claim is true, violations of prison policies and/or procedures do not rise to the level of a constitutional violation. <u>See</u>, <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see</u> <u>also</u>, <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). The defendants are entitled to summary judgment on this claim as well.

As an additional ground for dismissal, it appears that the defendants in their individual capacities are entitled to

qualified immunity as described in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), and its progeny. Further, in their official capacities, the defendants may not be sued under §1983 for damages as they are not "persons" within the meaning of § 1983. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 64, 109 S.Ct. 2304 (1989).

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgement be granted, any other outstanding motions be denied as moot, and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
December 10, 2009

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).